Gyronne BUCKLEY *v.* STATE of Arkansas

CR 01-644 76 S.W.3d 825

Supreme Court of Arkansas
Opinion delivered May 30, 2002

[Petition for rehearing denied July 11, 2002.*]

* ARNOLD, C.J., not participating.

*Hampton & Larkowski,* by: *Mark F. Hampton* and *J. Thomas Sullivan,* for appellant.

*Mark Pryor,* Att'y Gen., by: *David R. Raupp,* Sr. Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. Gyronne Buckley was convicted in 1999 of two counts of delivery of a controlled substance and was sentenced to two life sentences. He appealed his convictions to this court, and we reversed and remanded for resentencing. *See Buckley v. State,* 341 Ark. 864, 20 S.W.3d 331 (2000). Prior to the resentencing trial, Buckley filed a motion with the trial court in which he attempted to waive a jury for sentencing. He asked the trial court to give him the minimum sentence available under the sentencing grid, and he claimed that he would be prejudiced because the same jury that found him guilty would not hear the testimony offered in the resentencing trial. Particularly, Buckley noted that the testimony and credibility of Keith Ray, a Drug Task Force officer on whose testimony the State had relied heavily at the first trial, had been discredited in an unrelated federal *habeas corpus* proceeding. The State refused to agree to waive jury sentencing, and the trial court denied the motion on the ground that the State has a right to a jury trial. The court also ruled that either party could call Ray as a witness.

The sentencing trial then began, and at the conclusion of the trial, the jury sentenced Buckley to twenty-eight years on each conviction. The trial court ordered that the sentences run consecutively. On appeal, Buckley argues that the trial court erred in finding that the State had a right to a jury trial on resentencing and in denying his motion to waive resentencing by a new jury. He also raises eight points that he concedes were not preserved for review by a contemporaneous objection, but asserts that this court should consider them anyway under a plain-error review.

The first question presented in this appeal requires this court to conduct an analysis of the Arkansas bifurcated-sentencing statute, Ark. Code Ann. § 16-97-101 *et seq.* (Supp. 2001). This

court reviews questions of statutory interpretation *de novo* because it is our responsibility to determine what a statute means. *R.N. v. J.M.*, 347 Ark. 203, 61 S.W.3d 149 (2001); *Stephens v. Arkansas School for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000); *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999)).

■ Since 1993, Arkansas law has provided for a bifurcated-sentencing procedure, with guilt and sentence being determined by a jury at separate phases. Arkansas Code Annotated § 16-97-101 (Supp. 2001) governs this procedure, and the statute provides, in relevant part, as follows:

> The following procedure shall govern jury trials which include any felony charges:
>
> (1) The jury shall first hear all evidence relevant to every charge on which a defendant is being tried and shall retire to reach a verdict on each charge.
>
> (2) If the defendant is found guilty of one (1) or more charges, the jury shall then hear additional evidence relevant to sentencing on those charges. Evidence introduced in the guilt phase may be considered, but need not be reintroduced at the sentencing phase.
>
> (3) Following the introduction of additional evidence relevant to sentencing, if any, instruction on the law, and argument, the jury shall again retire and determine a sentence within the statutory range.
>
> * * *
>
> (5) After a jury finds guilt, *the defendant, with the agreement of the prosecution and the consent of the court, may waive jury sentencing*, in which case the court shall impose sentence.

(Emphasis added.) Further, Ark. Code Ann. § 5-4-103(a) (Repl. 1997) provides that "[i]f a defendant is charged with a felony and is found guilty of an offense by a jury, the jury shall fix punishment *in a separate proceeding* as authorized by this chapter." (Emphasis added.)

■ This court has recognized that under the bifurcation structure, a criminal trial is split into separate and distinct stages, the first of which involves the finding of guilt or innocence. *Daniels v. State*, 322 Ark. 367, 908 S.W.2d 638 (1995); *Hill v. State*,

318 Ark. 408, 887 S.W.2d 275 (1994). In the event of a finding of guilt, further proceedings are held in which evidence may be presented prior to the setting of sentence. *Hill v. State, supra.* Specifically, the court in *Hill* wrote that "the legislature has provided . . . for separate and distinct procedures governing jury trials and sentencing by jury," and that "*sentencing is now, in essence, a trial in and of itself, in which new evidence may be submitted.*" *Hill*, 318 Ark. at 413 (emphasis added).

In this appeal, Buckley raises several arguments to support his claim that there was no authority for him to be resentenced by a jury. First, he contends that Arkansas case law holds that resentencing before a jury that does not consider an accused's guilt is inappropriate because of the potential for prejudice in the sentencing decision, due to the jurors' inability to consider the credibility of all evidence leading to conviction on the underlying charge. In support of this assertion, he cites *Jones v. Arkansas*, 929 F.2d 375 (8th Cir. 1991), where the Eighth Circuit Court of Appeals pointed out in a footnote that "[u]nder Arkansas law, it appears that a new jury generally cannot be empaneled solely on the issue of sentencing." *Jones*, 929 F.2d at 381, n.17 (citing *Mathis v. State*, 267 Ark. 904, 591 S.W.2d 679 (Ark. App. 1980) (*overruled on other grounds by Rogers v. State*, 10 Ark. App. 19, 660 S.W.2d 949 (1983)).

■ ■ However, *Jones* was decided prior to the enactment of the bifurcated sentencing statute, § 16-97-101. Sentencing in Arkansas is, of course, entirely a matter of statute. *See, e.g., Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001); *State v. Freeman*, 312 Ark. 34, 846 S.W.2d 660 (1993). Therefore, because the sentencing statute has changed since the cases Buckley relies on were rendered, the holdings of those cases do not help him.

Second, Buckley asserts that, although the General Assembly explicitly authorized resentencing by a newly empaneled jury in capital cases, *see* Ark. Code Ann. § 5-4-616 (Repl. 1997),[1] there is no such explicit authorization for new juries in noncapital cases.

---

[1] (a) Notwithstanding § 5-4-602(3), which requires that the same jury sit in the sentencing phase of a capital murder trial, the following shall apply [in the event of a remand of a capital case after vacation of death sentence]:

In addition, he contends that § 5-4-103 does not contemplate jury sentencing upon a guilty plea. Because there is no language authorizing remand for resentencing before a new jury not hearing the guilt issue in noncapital cases, he argues, it was error for the trial court to empanel a new jury to hear his sentencing case.

■ However, this argument ignores the fact that § 16-97-101(6) clearly contemplates jury sentencing after a plea of guilty. In such a situation, the jury empaneled for the purpose of sentencing would not have heard the evidence relating to the guilt issue in the first instance either, but it is still permitted to decide sentencing. Thus, by analogy, if a jury can decide a sentence after a defendant has pled guilty, but that jury has heard no evidence other than the fact that the defendant had already been convicted, then a jury should be permitted to decide a sentence in a case where a defendant's conviction has been affirmed, but only the sentence reversed. The question of guilt, as in a guilty plea, has already been decided; it remains only for the jury to determine a just sentence.

■ Further, as there is no hindrance to the impaneling of a jury to determine a sentence on remand, then there is no infirmity in the State's refusal to assent to a defendant's attempted waiver of a jury. In *State v. Vasquez-Aerreola*, 327 Ark. 617, 940 S.W.2d 451 (1997), this court held that, under Ark. R. Crim. P. 31.1, criminal cases that require a trial by jury must be so tried unless: (1) waived by the defendant; (2) assented to by the prosecutor; and (3) approved by the court. Given the language of this rule, a trial court has no authority to accept a defendant's guilty plea unless the State assents to it. *See also State v. Singleton*, 340 Ark. 710, 13 S.W.3d 584 (2000); *Fretwell v. State*, 289 Ark. 91, 708 S.W.2d 630 (1986) (expressly declining to follow jurisdictions that afford criminal defendants an absolute right to waive a jury trial).

■ ■ Indeed, § 16-97-101(5) states that "[a]fter a jury finds guilt, the defendant, *with the agreement of the prosecution and the consent of the court, may waive jury sentencing*, in which case the court

---

(1) . . . When a capital case is remanded after vacation of a death sentence, the prosecutor may: . . .

(B) Move the trial court to impanel a new sentencing jury[.]

shall impose sentence." (Emphasis added.) Thus, it is clear that in sentencing, as in trial, a defendant can waive a jury only with the agreement of the State. Here, because the State declined to consent to Buckley's request to waive a jury for his resentencing, the trial court did not err in submitting the matter to a jury.

These arguments aside, Buckley's convictions should be affirmed because he has not demonstrated how he was prejudiced by having a different jury sentence him. Although he claims that he was prejudiced because the sentencing jury was not afforded an opportunity to evaluate the credibility of Keith Ray, who testified at Buckley's first trial, Buckley did not call Ray to impeach Ray's testimony at Buckley's sentencing hearing, despite the fact that the trial court specifically noted that both sides would be permitted to call Ray as a witness. If any prejudice arises from this situation, it is of Buckley's own making.

Additionally, Buckley cannot demonstrate that he was prejudiced by being resentenced by a new jury, because he received a sentence within the statutory range, and one that was significantly less than his original sentence.[2] Delivery of a controlled substance is a Class Y felony, *see* Ark. Code Ann. § 5-64-401(a)(1)(i) (Repl. 1997), which carries a sentencing range of ten-to-forty years or life. Ark. Code Ann. § 5-4-401(a)(1) (Repl. 1997). A defendant who has received a sentence within the statutory range short of the maximum sentence cannot show prejudice from the sentence itself. *See Young v. State*, 287 Ark. 361, 699 S.W.2d 398 (1985).

Next, Buckley raises eight assignments of error, although he concedes that he did not raise a contemporaneous objection to these matters at trial, and he acknowledges that Arkansas has traditionally refused to recognize claims of error not preserved at trial. Nevertheless, he argues that this court should permit and conduct "plain error" review, claiming that this court has at least "evidenced a willingness to recognize claims of fundamental error." Citing *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), he

---

[2] As noted above, Buckley's first trial resulted in two life sentences, ordered to be run consecutively. The present jury sentenced him to twenty-eight years to be served on each conviction; the trial court again ordered that they run consecutively.

claims that the court has "expressly recognized four distinct classes of error which potentially warrant appellate review in the absence of preservation in the trial court," and he asserts that the third and fourth *Wicks* exceptions "suggest a limited basis for recognition of fundamental and plain error in this appeal."

In *Wicks*, this court noted that some jurisdictions, particularly the federal courts, conduct plain-error review, but held that in Arkansas, an argument for reversal will not be considered in the absence of an appropriate objection. However, the *Wicks* court recognized four exceptions to the basic requirement of an objection in the trial court, noting that they were "so rare that they may be reviewed quickly." *Wicks*, 270 Ark. at 785. Two of the exceptions occur in death-penalty cases. The court stated that an objection would not be required when the trial court failed to bring to the jury's attention a matter essential to its consideration of the death penalty itself; a second exception arises when the error is made by the trial judge himself at a time when defense counsel has no knowledge of the error and hence no opportunity to object. *Id.* at 785-86.

*Wicks* stressed that the third exception "is a mere possibility, for it has not yet occurred in any case. That relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Id.* at 786. However, with respect to this third exception, the court cautioned that an appellant "can not predicate error upon the failure of the court to make a ruling that he did not at the time ask the court to make, unless the remarks were so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury not to consider the same." *Id.*

Finally, the *Wicks* court noted a fourth possible exception that "might arguably be asserted on the basis of [then] Uniform Evidence Rule 103(d)." *Id.* at 787. That rule, which is now Ark. R. Evid. 103(d), provides that "[n]othing in this rule precludes taking notice of errors affecting substantial rights, although they were not brought to the attention of the court." Again, however, the court warned about relying on this excep-

tion, stating as follows: That statement, however, is negative, not imposing an affirmative duty, and at most applies only to a ruling which admits or excludes evidence. If there is any other exception to our general rule that an objection must be made in the trial court, we have not found it in our review of our case law.
*Id.*

Buckley asserts that his arguments on appeal fall into the latter two categories of *Wicks* exceptions, and argues that this court should acknowledge the policy reasons behind adopting a plain-error standard. Particularly, he claims that application of plain error promotes the interest of fair trials and due process, and he contends that the refusal to consider unpreserved claims generates further litigation. However, for many years, Arkansas has allowed collateral attacks upon a final conviction and appeal by means of a postconviction challenge to determine whether a sentence was void because it violated fundamental rights guaranteed by the Constitutions or laws of Arkansas or the United States. The present rule for such a challenge is Ark. R. Crim. P. 37. *See Davis v. State*, 345 Ark. 161, 44 S.W.3d 726 (2001).[3]

Turning to Buckley's eight "plain error" points, the first three of his claims appear to involve the fourth of the *Wicks* exceptions; that is, he asserts they are "errors affecting his substantial rights." First, Buckley claims that his sentence violates the Eighth and Fourteenth Amendments and Arkansas law because the jury was not instructed on the burden of proof imposed upon the State for proof of prior offenses to be considered by the jury in assessing punishment. Here, Buckley argues that the State adduced testimony concerning other drug offenses he allegedly committed; he submits that Arkansas law requires those prior offenses used for sentencing purposes must be established by a preponderance of the evidence. *See Walls v. State*, 336 Ark. 490, 986 S.W.2d 397 (1999). Because the trial court did not give an

---

[3] In his reply brief, Buckley raises an argument that Rule 37 proceedings impose a more onerous burden of proof and a less favorable standard of review on a criminal defendant than that which is available on direct appeal. He does not support this argument with any convincing authority, however, and we therefore do not consider it further. *See, e.g., Hollis v. State*, 346 Ark. 175, 55 S.W.3d 756 (2001); *Dougan v. State*, 330 Ark. 827, 957 S.W.2d 182 (1997); *Williams v. State*, 325 Ark. 432, 930 S.W.2d 297 (1996).

instruction to the jury limiting its consideration to those matters established by evidence, he claims, his substantial rights were affected.

 This issue deals with the trial court's decision to admit evidence, which is subject to an abuse-of-discretion standard. *See Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001); *Mixon v. State*, 330 Ark. 171, 954 S.W.2d 214 (1997). Evidentiary rulings simply must be raised below before this court will consider them on appeal. Rule 103(d) of the Arkansas Rules of Evidence is, as the *Wicks* court noted, "negative, not imposing an affirmative duty[.]" Here, we note that Buckley did not ask the court to provide any direction to jurors as to what evidence could be considered in setting punishment. This court has repeatedly held that the failure to give an admonition to the jury is not prejudicial error where the instruction or admonition was not requested below. *See, e.g., Langford v. State*, 332 Ark. 54, 962 S.W.2d 358 (1998); *Gray v. State*, 327 Ark. 113, 937 S.W.2d 639 (1997); *Puckett v. State*, 324 Ark. 81, 918 S.W.2d 707 (1996). Further, Buckley bases his claim of fundamental error and prejudice on the fact that the jury imposed a sentence in excess of the statutory minimum. However, as noted above, this court has held that when a defendant receives a sentence within the statutory range, he cannot prove that he was prejudiced. *See Young v. State*, 287 Ark. 361, 699 S.W.2d 398 (1985).

 Next, Buckley argues that the record reflects plain error in the introduction of evidence of an unrelated offense that he claims was not relevant to his guilt. He points out testimony by Officer Bethell, who testified about drug transactions that were not charged against Buckley. This testimony, he claims, affected his substantial rights because the evidence of the drug transaction was not relevant to any issue in the resentencing. This court has frequently held that relevancy objections must be made in order to preserve an issue. *See Vanesch v. State*, 343 Ark. 381, 37 S.W.3d 196 (2001); *Slocum v. State*, 325 Ark. 38, 924 S.W.2d 237 (1996) (where appellant failed to make a specific, contemporaneous objection to relevancy of witness's testimony as to his references to gangs, appellant waived the issue on appeal). Because this court has in the past refused to address relevancy issues with-

out a contemporaneous objection by counsel during trial, they clearly do not "affect a defendant's substantial rights" to such a degree as to cause such errors to fall into any of the *Wicks* exceptions.

Buckley's next point on appeal also involves a relevancy question. He contends that the prosecutor erred in eliciting irrelevant evidence relating to his business in Arkadelphia, and suggesting that Buckley was in the business of selling drugs. However, as just noted, a defendant must object to irrelevant evidence in order to preserve the issue for appeal.

Next, Buckley claims a series of errors occurred during the prosecutor's closing argument. He argues that the prosecutor committed the following errors: 1) advancing a "golden rule" argument, inviting jurors to speculate that Buckley had sold drugs to their children or would in the future; 2) arguing outside the trial record in telling jurors that Buckley had been trafficking in drugs for ten years; 3) inviting the jury to speculate on Buckley's culpability for the actions of Johnny Rucker, who killed a woman, allegedly after going on a drug binge with Buckley's cousin, Reginald Brim, who bought the drugs from Buckley; and 4) arguing outside the record in asserting that Buckley had coerced witnesses not to testify against him. He claims that these four errors constituted such fundamental error that the trial court had a "duty to intervene, without an objection, and correct [the] serious error either by an admonition to the jury or by ordering a mistrial." *Wicks*, 270 Ark. at 786. As was noted above, though, this third *Wicks* exception "is a mere possibility, for it has not yet occurred in any case." *Id.*

The first of these assignments of error relates to a prosecutor's alleged "golden rule" argument. However, this court has required a contemporaneous objection in order to preserve a "golden rule" issue for appeal. *See Johnson v. State*, 333 Ark. 673, 972 S.W.2d 935 (1998). As noted above, if the court has previously rejected an attempt to argue an error on appeal when no objection was made, the alleged error cannot be within the *Wicks* categories.

█ Next, Buckley claims error because the prosecutor argued outside of the record and claimed that Buckley had been dealing drugs for ten years. He notes that testimony to this effect was offered at the first trial by way of Officer Keith Ray of the Drug Task Force, but Ray was not called to testify at the resentencing. The prosecutor made the statement, Buckley claims, to influence the jury to believe that Buckley was a long-time drug dealer in Arkadelphia, and this misconduct "resulted in fundamental error due to trial counsel's failure to object." Clearly, if the error is predicated on counsel's failure to object, then it is the kind of error that should be addressed in a Rule 37 proceeding, not in a direct appeal where the issue is admittedly not preserved for appeal.

█ Nevertheless, Buckley claims that the trial court was also at fault in failing to control the prosecutor's argument. The *Wicks* exception should apply, he asserts, "where the same or similar error or misconduct has already required relief by reversal or mistrial." While Officer Ray's hearsay testimony during Buckley's first sentencing proceeding did result in a reversal of the sentence, Buckley objected to the testimony in his first trial, giving the trial court the opportunity to correct the error. Here, however, there was no objection to the fact that the prosecutor was arguing outside of the record, which would have given the trial court an opportunity to admonish the jury to disregard the prosecutor's statements. Further, Buckley was given the option of calling Ray himself and discrediting his testimony; he failed to do so. He cannot now argue that he was fundamentally prejudiced when he could have avoided the problem himself.

Next, Buckley maintains that the prosecutor's reference, during his closing argument, to the case of *Rucker v. State*, 320 Ark. 643, 899 S.W.2d 447 (1995), was improper and fundamental error. During Buckley's case-in-chief, the State elicited testimony on cross-examination from Nelda Swan, a character witness for Buckley, that she "would be surprised" to find out that Buckley had provided drugs to "some person who was on a binge that killed somebody that night." Buckley did not object at that point, nor did he object when the State raised this issue again during its closing argument.

■ Buckley cites *Walls v. State*, 336 Ark. 490, 986 S.W.2d 397 (1999), as an example of a case in which this court reversed a sentence where the record reflected that the jury based its sentence on a consideration of evidence of other crimes committed by one other than the accused. However, in *Walls*, the State introduced, as victim-impact evidence, testimony that Walls "controlled Heath [Stocks, a boy whom Walls had raped] as a hit man and ordered him to murder his family." This court held that such evidence was entirely inappropriate as victim-impact evidence, and reversed Walls's sentence because it was extremely prejudicial. Walls, however, objected to the State's use of such evidence and to the court's consideration of the dismissed offenses. There was no similar objection here. Again, as noted above, this kind of alleged error must be preserved by contemporaneous objection.

■ In the fourth of his assignments of error related to the State's closing arguments, Buckley contends that the prosecutor improperly argued outside of the record and asserted that Buckley had coerced witnesses not to testify against him. Again, there was no objection. Even if Buckley had objected, however, the prosecutor's argument about Buckley's threatening witnesses was supported by the evidence. Therefore, we decline to find error in this point.

■ Buckley's final point on appeal is that the trial court abused its discretion in ordering his sentences to be served consecutively. He concedes that he did not object to the imposition of consecutive sentences, thus waiving the point for appeal, and he acknowledges that the trial court was authorized, under Ark. Code Ann. § 5-4-403(a) (Repl. 1997), to impose consecutive sentences. A trial court's decision to impose sentences consecutively is entirely within the court's discretion, *see Pyle v. State*, 340 Ark. 53, 8 S.W.3d 491 (2000), and this court has previously required a contemporaneous objection in order to preserve the point for appeal. *See Brown v. State*, 326 Ark. 56, 931 S.W.2d 80 (1996). Therefore, we do not reach this issue.

In conclusion, there was no error in the trial court's decision to refuse to accept Buckley's attempt to waive a jury on resentenc-

ing. Further, none of Buckley's alleged "fundamental errors" amount to errors that would fall within the *Wicks* exceptions; because he did not object to any of these alleged errors at trial, none is preserved for review on appeal. Buckley's sentences are therefore affirmed.

ARNOLD, C.J., not participating.